UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

SOUTH FARMINGDALE WATER DISTRICT,

Plaintiff,

CV-*15-85*

- against -

UNITED STATES OF AMERICA,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ JAN 09 2015 ★

LONG ISLAND OFFICE

## CONSENT JUDGMENT

WHEREAS, South Farmingdale Water District, a municipal corporation located at 40 Langdon Road, Farmingdale, New York 11735 ("SFWD"), has asserted that the United States of America ("United States") is liable under section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, for costs SFWD has and/or will incur for response actions to address a groundwater plume located upgradient of SFWD's Plant No. 3;

WHEREAS, SFWD alleges that a plume of groundwater contaminated with volatile organic compounds ("VOCs") may be migrating, in part, from the former Naval Weapons Industrial Reserve Plant ("NWIRP")-Bethpage, as defined herein, and from the Northrop-Grumman Site, as defined herein, as well as from other third-party sites, if any, yet to be determined, in Bethpage, New York, towards the SFWD Plant No. 3;

WHEREAS, based on VOC concentration data from certain outpost groundwater monitoring wells upgradient of SFWD Plant No. 3, it is expected the contaminated

groundwater plume will reach the SFWD Plant No. 3, and evaluations thereof by the New York State Department of Environmental Conservation ("NYSDEC") and the Navy have indicated that wellhead treatment, or comparable alternative measure(s), for SFWD Plant No. 3 is necessary;

WHEREAS, SFWD has designed and constructed a wellhead treatment system for Plant No. 3 pursuant to the design specifications and parameters set forth in Appendix A;

WHEREAS, SFWD and the United States (collectively "the Parties") have engaged in negotiations specifically regarding the funding of the wellhead treatment system that SFWD has designed and constructed for SFWD Plant No. 3 pursuant to the design specifications and parameters set forth in Appendix A;

WHEREAS, the Parties now wish to resolve this matter without further litigation and without a litigated resolution or admission by either Party as to any remaining issues of fact or law;

WHEREAS, the Parties enter into this Consent Judgment voluntarily and mutually agree to undertake all actions required of them by the terms and conditions of this Consent Judgment; and

WHEREAS, the Parties agree, and the Court finds, that this Consent Judgment is fair, reasonable, lawful and in the public interest.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that:

## I.   **PARTIES BOUND**

1.   <u>The Parties</u>. The Parties to this Consent Judgment are the South Farmingdale Water District ("SFWD") and the United States of America ("United States").

2. <u>Application of this Consent Judgment</u>. This Consent Judgment shall apply to, be binding upon, and inure to the benefit of SFWD and the United States. This Consent Judgment shall not extend to or inure to the benefit of any party, person or entity other than SFWD and the United States, and nothing in this Consent Judgment shall be construed to make any person or entity not executing this Consent Judgment a third-party beneficiary to this Consent Judgment.

## II.   **EFFECTIVE DATE**

3. <u>Effective Date</u>. The Effective Date of this Consent Judgment shall be the date on which this Consent Judgment is entered by the Court.

## III.   **DEFINITIONS**

4. <u>Definitions</u>. Unless otherwise expressly provided herein, terms used in this Consent Judgment which are defined in CERCLA or its implementing regulations shall have the meaning assigned to them in CERCLA or its implementing regulations. Whenever the terms listed below are used in this Consent Judgment, the following definitions shall apply:

a.   "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-75.

b.   "Covered Matters" shall mean any and all claims for Response Costs defined in Sub-paragraph 4.o below, including interest accrued thereon pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), as more fully described in Sub-paragraph 5.a. below, that were, could have been, or hereafter could be asserted by SFWD against the United States for the treatment of groundwater at SFWD Plant No. 3, in accordance with the design specifications and parameters set forth in Appendix A and associated operation and maintenance costs (including any increase in operation and maintenance costs due to any

change in standards or levels of site-related contaminants as set forth in the Remedial Goal section of Appendix A) for five years from the Effective Date of this Consent Judgment, and also for the period from the beginning of the sixth through the end of the thirtieth year from the Effective Date of this Consent Judgment unless treatment is not necessary to reach the Remedial Goal set forth in Appendix A based on sampling results from Plant No. 3 influent (raw water) or relevant outpost monitoring wells, or unless SFWD permanently shuts down Plant No. 3, whichever is earlier, to address the plume of groundwater contaminated with VOCs that SFWD alleges may be migrating, in part, from the former NWIRP-Bethpage, as defined herein, and from the Northrop-Grumman Site, as defined herein, as well as from other third-party sites, if any, yet to be determined, in Bethpage, New York, towards SFWD Plant No. 3.

c.      "Day" shall mean a calendar day. In computing any period of time under this Consent Judgment, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next day that is not a Saturday, Sunday or federal holiday.

d.      "Electronic Funds Transfer" shall mean the transfer of funds via FedWire pursuant to federal procedures for such a transfer and in accordance with account information provided by SFWD.

e.      "EPA" shall mean the United States Environmental Protection Agency.

f.      "Navy" shall mean United States Department of the Navy.

g.      "NCP" shall mean the National Contingency Plan, which is codified at 40 C.F.R. Part 300 and is referenced in CERCLA section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B).

*Consent Judgment – South Farmingdale Water District v. United States*          *4*

h.    "Northrop Grumman" shall mean Northrop Grumman Systems Corporation, formerly known as Northrop Grumman Corporation, and/or its predecessors and/or successors in interest, parent companies, subsidiaries, and all related entities, and their officers, employees and agents.

i.    "Northrop Grumman Site" shall mean the approximately 605 acres of property located in Bethpage, New York in east-central Nassau County that is owned, or formerly owned, by Northrop Grumman and is contiguous to the north, west and south boundaries of the NWIRP-Bethpage as defined herein.

j.    "NYSDEC" shall mean the New York State Department of Environmental Conservation, and any successor agency or official of the State of New York.

k.    "NWIRP-Bethpage" shall mean the former Naval Weapons Industrial Reserve Plant ("NWIRP") located on approximately 105 acres in Bethpage, New York in east-central Nassau County near the intersection of South Oyster Bay Road and the Long Island Railroad tracks.

l.    "Paragraph" or "Sub-paragraph" shall refer to an enumerated paragraph or sub-paragraph of this Consent Judgment.

m.    "Plant No. 3" shall refer to the public supply wells that are found at the water supply plant, wells, and associated facilities, located at the SFWD's Hicksville Massapequa Road, Plainedge, NY site, which is situated in the northern part of SFWD's service area.

n.    "Records" includes all books, documents, and other data, including originals, in whatever form maintained, including electronic records maintained by SFWD in its files and electronic data bases, and the files and electronic data bases of its contractors and subcontractors

o.     "Response Costs" shall mean any and all past, present and future "necessary costs of response" incurred "consistent with the national contingency plan," within the meaning of CERCLA section 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B), that SFWD has incurred or may incur for the design and construction of a system for the treatment of groundwater at SFWD Plant No. 3, in accordance with the design specifications and parameters set forth in Appendix A, and for the associated operation and maintenance of the treatment system (including any increase in operation and maintenance costs due to any change in standards or levels of site-related contaminants as set forth in the Remedial Goal section of Appendix A) for five years from the Effective Date of this Consent Judgment, and also for the period from the beginning of the sixth through the end of the thirtieth year from the Effective Date of this Consent Judgment unless treatment is not necessary to reach the Remedial Goal set forth in Appendix A based on sampling results from Plant No. 3 influent (raw water) or relevant outpost monitoring wells, or unless SFWD permanently shuts down Plant No. 3, whichever is earlier, to address the plume of groundwater contaminated with VOCs that SFWD alleges may be migrating, in part, from the former NWIRP-Bethpage, as defined herein, and from the Northrop-Grumman Site, as defined herein, as well as from other third-party sites, if any, yet to be determined, in Bethpage, New York, towards SFWD Plant No. 3. Response Costs shall include interest as provided pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) as more fully described in Sub-paragraph 5.a. below.

p.     "SFWD" shall mean the South Farmingdale Water District, its affiliates, predecessors, parent companies, subsidiaries, and all related entities, which is a Town Law Article 13 Commissioner Elected Special Improvement District that provides water to customers and/or residents living within the SFWD, and any successor.

q.    "United States" shall mean the United States of America, including all of its departments, branches, agencies, instrumentalities, components, and successors, including, but not limited, to the United States Department of the Navy, and their officers, employees and agents.

## IV.    REIMBURSEMENT OF RESPONSE COSTS

5.    Payment for Design, Construction, Operation and Maintenance of Public Supply Well Treatment System.

a.    SFWD commits to design and construct, pursuant to the design specifications and parameters set forth in Appendix A, a wellhead treatment system for SFWD Plant No. 3, and the United States agrees to pay for the reasonable Response Costs incurred or to be incurred by the SFWD specifically for and limited to (a) the design and construction of such system, and (b) the operation and the maintenance of the treatment system for SFWD Plant No. 3 (including any increase in operation and maintenance costs due to any change in standards or levels of site-related contaminants as set forth in the Remedial Goal section of Appendix A), for five years from the Effective Date of this Consent Judgment, and also for the period from the beginning of the sixth through the end of the thirtieth year from the Effective Date of this Consent Judgment unless treatment is not necessary to reach the remedial goals set forth in Appendix A based on sampling results from Plant No. 3 influent (raw water) or relevant outpost monitoring wells, or unless SFWD permanently shuts down Plant No. 3, whichever is earlier.  Payment will be made in the following manner:

i. As soon as reasonably practicable after the Effective Date of this Consent Judgment, the United States agrees to pay to SFWD the sum of $3,346,021.72, which represents a portion of the reasonable Response Costs incurred to design and construct, pursuant to design specifications and parameters set forth in Appendix A, the wellhead

*Consent Judgment – South Farmingdale Water District v. United States*                7

treatment system for SFWD Plant No. 3.

ii.    No later than six months after the Effective Date of this Consent Judgment, SFWD will submit to the United States a claim for payment for any and all remaining design and construction costs additional to those submitted and paid pursuant to Paragraph 5(a)(i), if any, pursuant to the design specifications and parameters set forth in Appendix A, of the wellhead treatment system for SFWD Plant No. 3.    The documentation of any claim for payment of such additional, remaining costs shall include (A) paid invoices, (B) sufficient documentation to allow verification of the accuracy of the costs claimed, (C) confirmation from SFWD that such costs have actually been paid, and (D) a statement by SFWD that such costs were properly incurred in connection with the work performed in compliance with the design specifications and parameters set forth in Appendix A and are consistent with the NCP.  The claim for final payment for design and construction costs shall also include a spreadsheet that calculates simple interest, at the rate prescribed as of the date the cost was incurred pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), from the date of payment of each of the costs incurred for design and construction through the date of submission of the cost documentation; the spreadsheet shall reference each corresponding paid invoice.  The United States will make best efforts (a) to review and, if appropriate, approve such costs within thirty (30) days of receipt of the complete set of cost documentation, as set forth in this Sub-paragraph, enabling the United States to make such determination, and (b) as soon as reasonably practicable after the review and evaluation by the United States of costs incurred and interest accrued, to pay to SFWD the amount of remaining actual reasonable Response Costs incurred by the SFWD to design and construct the wellhead treatment system for SFWD Plant No. 3 that the United States finds to be properly supported.  The

United States has reviewed SFWD's expected costs for design and construction at Plant No. 3 and, based on the information available to date, it has estimated such costs to be in the range of $4,900,000 to $5,300,000 in 2012 dollars. As of the date of the execution of the Consent Judgment, SFWD has completed the design and construction of the wellhead treatment system for Plant No. 3.

iii. No later than March 30, 2015, SFWD will submit to the United States a claim for payment for the costs of the operation and maintenance of the wellhead treatment system at SFWD Plant No. 3 (including any increase in operation and maintenance costs due to any change in standards or levels of site-related contaminants as set forth in the Remedial Goal section of Appendix A) that were not included in the payment set forth in Paragraph 5(a)(i), up to and including such costs for the 2013 and 2014 calendar years. The claim for payment shall include (A) paid invoices, (B) SFWD employee costs attributable solely to the operation and maintenance of the wellhead treatment system at Plant No. 3, and not attributable to the overall operation and maintenance of Plant No. 3 or any other work for SFWD, (C) sufficient documentation to allow verification of the accuracy of the costs claimed, (D) confirmation from SFWD that such costs have actually been paid, and (E) a certification by SFWD that such costs were properly incurred in connection with the operation and maintenance of the wellhead treatment system at SFWD Plant No. 3 through the 2013 and 2014 calendar years and are consistent with the NCP. The claim for payment shall also include a spreadsheet that calculates simple interest, at the rate prescribed as of the date the cost was incurred pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), from the date of payment of each of the costs incurred for operation and maintenance of the wellhead treatment system at SFWD Plant No. 3 through the date of submission of the cost documentation; the spreadsheet shall

reference each corresponding paid invoice and documented SFWD employee costs attributable solely to the operation and maintenance of the wellhead treatment system at Plant No. 3, and not attributable to the overall operation and maintenance of Plant No. 3 or any other work for SFWD. The United States will make best efforts (a) to review and, if appropriate, approve such costs within thirty (30) days of receipt of the complete set of cost documentation, as set forth in this Sub-paragraph, enabling the United States to make such determination, and (b) as soon as reasonably practicable after the review and evaluation by the United States of costs incurred and interest accrued during the previous year, to pay to SFWD the amount of actual reasonable Response Costs incurred by the SFWD to operate and maintain the wellhead treatment system for SFWD Plant No. 3 that the United States finds to be properly supported. The United States has reviewed SFWD's expected costs for the first year of operation and maintenance of the wellhead treatment system at Plant No. 3 and, based on the information available to date including a production rate of approximately 300 million gallons per year, it has estimated such costs to be in the range of $75,000 to $90,000 (excluding potential Nassau County backwash disposal costs) in 2012 dollars.

iv. Starting no later than March 31, 2016, and then no later than three months after the end of the subsequent calendar years of operation of the wellhead treatment system at Plant No. 3, SFWD will submit to the United States a claim for payment for costs of the operation and maintenance of the wellhead treatment system at SFWD Plant No. 3 during the previous calendar year (including any increase in operation and maintenance costs due to any change in standards or levels of site-related contaminants as set forth in the Remedial Goal section of Appendix A), for five years from the Effective Date of this Consent Judgment, and also for the period from the beginning of the sixth

through the end of the thirtieth year from the Effective Date of this Consent Judgment unless treatment is not necessary to reach the remedial goals set forth in Appendix A based on sampling results from Plant No. 3 influent (raw water) or relevant outpost monitoring wells, or unless SFWD permanently shuts down Plant No. 3, whichever is earlier. The claim for payment shall include (A) paid invoices, (B) SFWD employee costs attributable solely to the operation and maintenance of the wellhead treatment system at Plant No. 3, and not attributable to the overall operation and maintenance of Plant No. 3 or any other work for SFWD, (C) sufficient documentation to allow verification of the accuracy of the costs claimed, (D) confirmation from SFWD that such costs have actually been paid, and (E) a certification by SFWD that such costs and expenses were properly incurred in connection with the operation and maintenance of the wellhead treatment system at SFWD Plant No. 3 during the previous year and are consistent with the NCP. The claim for payment shall also include a spreadsheet that calculates simple interest, at the rate prescribed as of the date the cost was incurred pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), from the date of payment of each of the costs incurred for operation and maintenance of the wellhead treatment system at SFWD Plant No. 3 during the previous year through the date of submission of the cost summary; the spreadsheet shall reference each corresponding paid invoice and documented SFWD employee costs attributable solely to the operation and maintenance of the wellhead treatment system at Plant No. 3, and not attributable to the overall operation and maintenance of Plant No. 3 or any other work for SFWD. The United States will make best efforts (a) to review and, if appropriate, approve such costs within thirty (30) days of receipt of the complete set of cost documentation, as set forth in this Sub-paragraph, enabling the United States to make such determination, and (b) as soon as

reasonably practicable after the review and evaluation by the United States of costs incurred and interest accrued during the previous year, to pay to SFWD the amount of actual reasonable Response Costs incurred by the SFWD to operate and maintain the wellhead treatment system for SFWD Plant No. 3 that the United States finds to be properly supported. The United States has reviewed SFWD's expected costs for the subsequent years of operation and maintenance of the wellhead treatment system at Plant No. 3, including equipment replacement costs that are expected, and, based on the information available to date including a production rate of approximately 300 million gallons per year, it has estimated such costs to be in the range of $75,000 to $110,000 (excluding potential Nassau County backwash disposal costs) in 2012 dollars.

      v.     SFWD agrees that, at the request of the United States, it will negotiate in good faith to determine if a lump sum payment for the remainder of 30 years of reasonable Response Costs of operation and maintenance of the upgraded wellhead treatment system is appropriate.

      vi.    Payment shall be in the form of Electronic Funds Transfer in accordance with instructions provided by SFWD.

    b.    The Parties agree and understand that the amounts to be paid under this Consent Judgment include the Response Costs for designing and constructing the wellhead treatment system for SFWD Plant No. 3 pursuant to the design specifications and parameters set forth in Appendix A,. This includes, but is not limited to, an agreement and understanding by the Parties that, as set forth in Appendix A, the building at Plant No. 3 will be large enough to: (i) house equipment for the iron removal and VOC air stripping treatment system for Plant No. 3, pursuant to design specifications and parameters set forth in Appendix A; and (ii) have sufficient space to accommodate the addition of a future air stripping tower and related equipment and connections,

if any, for treatment of water from Plant No. 3, should that treatment become necessary in the future.

c.      The United States' payments under Paragraph 5 shall not constitute or be construed as the assumption of any role in, the undertaking of any legal, contractual, or other responsibility for, or the approval of or concurrence in, any response actions that SFWD has taken, is now taking or may take in the future, including, but not limited to, the design, construction, operation and maintenance of the treatment system for Plant No. 3. The Parties agree that SFWD shall continue to have the lead role in the design, construction, operation and maintenance of the treatment system for Plant No. 3, and that SFWD is and shall remain solely responsible for compliance with all laws and regulations that apply to SFWD's response actions.

6.      SFWD's Certifications as to Recovery of Response Costs.

a.      Except as set forth in this Paragraph, SFWD certifies, based on its knowledge and belief and subject to the penalties of the False Claims Act, 31 U.S.C. § 3729 et seq., and/or other applicable law, that as of the Effective Date of this Agreement, SFWD has not been and will not be reimbursed for any Response Costs concerning the design, construction, operation and maintenance of the treatment system for SFWD Plant No. 3, except for the payments provided for in Sub-paragraph 5.a., funds paid by its customers, or funds that the SFWD has borrowed or will borrow, to pay for Covered Matters prior to the date SFWD receives the payments set forth in Sub-paragraph 5.a.

b.      SFWD certifies, based on its knowledge and belief and subject to the penalties of the False Claims Act, 31 U.S.C. § 3729 et seq., and/or other applicable law, that the payments provided for in Sub-paragraph 5.a. do not or will not include: (a) any attorney's fees except as allowed under CERCLA; (b) costs that are not adequately documented; (c) costs that are not incurred in connection with the work performed in compliance with the design specifications and

parameters set forth in Appendix A; (d) costs that are not necessary under CERCLA or were not incurred consistent with the NCP; (e) costs that have been, will be or can be reimbursed or paid by insurance or other form of recovery or subrogation from any insurance company, any subrogee at any time; (f) costs that have been, will be or can be reimbursed or paid by any third party including, but not limited to, another responsible party under CERCLA or other federal, state or common law at any time; (g) costs for which SFWD has been, will be or can be reimbursed, appropriated or otherwise paid by a state or local governmental entity at any time; and (h) costs for which SFWD receives reimbursement or payment from the United States by any means unrelated to this Consent Judgment. However, prior to the date SFWD receives the payments set forth in Sub-paragraph 5.a., SFWD may borrow funds or use funds paid by its customers for the Covered Matters.

7. <u>Compliance with the Anti-Deficiency Act</u>. All payment obligations by the United States under this Consent Judgment are subject to the availability of appropriated funds applicable for that purpose. No provision of this Consent Judgment shall be interpreted as or constitute a commitment or requirement that the United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. §§ 1341-44 and 1511-19, or any other applicable provision of law.

## V.    COVENANTS BY PARTIES

8. <u>Releases and Covenants Not to Sue</u>.

     a.    Except for the specific reservations of rights set forth in Sub-paragraphs 8.b and 8.c, SFWD and its predecessors, successors, assigns, affiliates, parent companies, subsidiaries, and all related entities including, but not limited to, SFWD, and their officers, commissioners, directors, shareholders, agents, employees and servants, hereby covenant not to sue the United States, and release, surrender, and forever discharge any and all claims and causes

of action, in law or in equity, whether known or unknown, against the United States based on CERCLA or any other federal, state, or common law arising out of or in connection with Covered Matters. SFWD further agrees that except for the payments required by Sub-paragraph 5.a. of this Consent Judgment, SFWD shall not seek or accept reimbursement from the United States for Covered Matters, and hereby certifies that it has not previously been reimbursed, for any costs related to Covered Matters, in connection with any past, existing or future contracts or other agreements with, or grants or subsidies funded by or received from, the United States. If SFWD becomes aware of or is offered any such reimbursement or other benefit, it shall promptly give notice of the terms of this Consent Judgment to the individual, agency or other entity that is offering or has provided such reimbursement or other benefit, and shall simultaneously notify the United States at the addresses specified in Paragraph 21. However, prior to the date SFWD receives the payments set forth in Sub-paragraph 5.a., SFWD may borrow funds or use funds paid by its customers for the Covered Matters, and shall not be required to provide any notice to the United States concerning its use of such funds.

b.      The release in the preceding Sub-paragraph does not apply if the United States defaults on agreed cost reimbursement amounts, as set forth in Paragraph 5, or if the parties are not able to reach agreement on the amount of reimbursement costs following SFWD's submission of documentation of its claim(s) for payment, as required by Paragraph 5. The release in the preceding Sub-paragraph does apply to all costs that the United States has reimbursed to SFWD. The release in the preceding Sub-paragraph does not apply to, and SFWD reserves any and all rights it may have with respect to, the United States and any other entity for any non-Covered Matters, which includes, but is not limited to, the design, construction, operation and maintenance of an additional air stripping tower, and design and construction costs due to any change in standards or levels of site-related contaminants as described in the Remedial Goal

paragraph of Appendix A.

c.     The United States hereby covenants not to sue SFWD and releases, surrenders, and forever discharges any claims and causes of action against SFWD arising out of or in connection with Covered Matters, except that: (i) the United States specifically reserves its right to assert against SFWD any claims or causes of action brought on behalf of EPA or a federal natural resources trustee; and (ii) nothing in this Consent Judgment shall constitute or be construed as a waiver, limitation or release of any claims or causes of action by the United States to enforce any federal laws or regulations at or in connection with SFWD Plant No. 3. SFWD specifically reserves any and all claims or defenses with respect to the United States' reservation of rights set forth in this Sub-paragraph, except that SFWD shall not seek a greater contribution by the United States to Response Costs other than the payments required by Sub-paragraph 5.a. of this Consent Judgment for Covered Matters. In addition, the Parties specifically reserve the right to seek judicial enforcement of the terms of this Consent Judgment.

d.     Nothing in this Consent Judgment shall constitute or be construed as a requirement that the United States pay for costs of (i) responding to the plume of groundwater contaminated with VOCs that may be migrating towards other public supply wells within SFWD, and/or other public supply wells of third-party water supply districts, corporations, or entities, or (ii) the design and construction of the addition of a future air stripping tower and related equipment and connections, if any, for treatment of water from Plant No. 3, except that the design and construction of the treatment facility under this Consent Judgment shall have sufficient space to accommodate the addition of a future air stripping tower and related equipment and connections, if any, for treatment of water from Plant No. 3, should that treatment become necessary in the future.

e.     Nothing in this Consent Judgment shall constitute or be construed as releasing or providing contribution protection to any person or entity other than the United States, as provided in Sub-paragraph 10.b.

f.     Nothing in this Consent Judgment shall be construed to release any person or entity not executing this Consent Judgment from any liability whatsoever.

g.     Nothing in this Consent Judgment shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Judgment.  The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Decree may have under applicable law.

h.     Each of the Parties expressly reserves any and all rights (including, but not limited to, any right of contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Covered Matters and/or this Consent Judgment against any person not a Party hereto.   Nothing in this Consent Judgment diminishes the right of the United States pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f),  to pursue any such persons to obtain response costs and to enter into settlements that give rise to contribution protection under Section 113(f)(2).

## VI.   INDEMNIFICATION & CLAIM PROTECTION

9.     Indemnification by SFWD.

a.     SFWD agrees to indemnify, save, and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all past, present or future claims and/or causes of action, including, but not limited to, personal injury or property damage claims, arising from, or on account of, negligent or other wrongful acts or omissions of SFWD, its officers, directors, employees, agents, contractors, subcontractors, representatives, and any person acting on its behalf or under its control, with

respect to and/or carrying out the Covered Matters. Further, SFWD agrees to pay the United States all actual costs that the United States incurs, including, but not limited to, attorneys' fees and other direct and indirect litigation and settlement costs, arising from, or on account of, claims and/or causes of action asserted against the United States based on negligent or other wrongful acts or omissions of SFWD, its officers, directors, employees, agents, contractors, subcontractors, representatives, and any person acting on its behalf or under its control, with respect to and/or carrying out the Covered Matters. The United States shall not be held out as a party to any contract entered into by or on behalf of SFWD with respect to and/or carrying out the Covered Matters. Neither SFWD nor any contractor or subcontractor shall be considered an agent or representative of the United States.

b.     SFWD also agrees to indemnify and hold harmless the United States with respect to any and all claims and/or causes of action for damages or reimbursement arising from or on account of contract, agreement, or arrangement between SFWD and any person or entity with respect to and/or carrying out the Covered Matters, including, but not limited to, claims on account of construction delays.

c.     The United States shall give SFWD reasonable notice of any claim for which the United States plans to seek indemnification pursuant to this Paragraph, and shall consult with SFWD prior to settling any such claim.

10.     Protection Against Claims.

a.     The Parties acknowledge and agree, and the Court finds, that the payments to be made by the United States pursuant to Paragraph 5 of this Consent Judgment represent a good faith compromise of disputed claims and that the compromise represents a fair, reasonable, equitable and complete resolution of Covered Matters.

b.      With regard to any claim for costs, damages or other claims against the United States arising out of or in connection with Covered Matters, the Parties acknowledge and agree, and by entering this Consent Judgment, this Court finds, that this settlement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that the United States is entitled, as of the Effective Date of this Consent Judgment, to contribution protection pursuant to CERCLA section 113(f), 42 U.S.C. § 9613(f), the Uniform Comparative Fault Act, or as may be otherwise provided by law, for Covered Matters, , whether by statute or common law, extinguishing the United States' liabilities to persons not a Party to this Consent Judgment. Any rights the United States may have to obtain contribution or otherwise recover costs or damages from persons not a Party to this Consent Judgment are preserved.

## VII.      RECORDS PRODUCTION, RETENTION AND AUDITS

11.      Production of Records.

In accordance with the notice procedures set forth in Paragraph 22, SFWD shall produce the following records to the United States:

a.      Within thirty (30) days after any further design plans, or portions thereof, are provided to SFWD by its engineering consultants, SFWD agrees to provide the United States with copies thereof and shall send such copies by reliable means of transmission with a certified confirmation of receipt to the sender.

b. On an annual basis, during the time that Plant No. 3 is operational, due no later than February 28 of the following year, SFWD shall provide to the United States a report that identifies (1) all analytical results (excluding pH and chlorine monitoring) conducted for SFWD Plant No. 3; (2) operational and maintenance issues specific to the extraction system, iron removal system and VOC removal system; (3) monthly pumping rates; (4) iron filtration backwash rates; and (5) quality of backwash waste water.

c. No later than 45 days after discovery, or upon notification to governmental authorities (including, but not limited to, the New York State Department of Conservation, the New York State Department of Health, and the Nassau County Department of Health), whichever is earlier, SFWD shall provide to the United States notification of the initial detection of site-related VOCs and the detection of any site-related VOCs that reach 50 percent of the design specifications and parameters that are set forth in Appendix A for VOC concentrations in the raw water at SFWD Plant No. 3.

12. Right to Conduct an Audit.

a. The United States has the right to conduct an independent audit and review costs documentation or any other non-privileged documents necessary for the purpose of assuring that all costs for which SFWD seeks recovery from the United States were necessary costs of response incurred consistent with the National Contingency Plan, 40 C.F.R. Part 300, within the meaning of section 107(a)(4)(B) of CERCLA, 42 U.S.C. section 9607(a)(4)(B). The United States shall pay all costs associated with the independent audit.

b. In conducting such an audit, the United States has the right to examine the records relating to or supporting all costs claimed by SFWD as Response Costs under this Consent Judgment. This right shall include the right to inspect, at reasonable times, relevant work sites. The purpose of this authority is to ensure that the costs claimed are: (i) reasonable in nature and

amount, and not specifically disallowed by this Consent Judgment; (ii) allocable to the site for which this Consent Judgment provides payments by the United States; and (iii) actually incurred. To the extent that SFWD employs any contractor or subcontractor to perform the response work, SFWD agrees to insert a clause in any and all contracts authorizing the United States to examine the records relating to or supporting all costs claimed by SFWD as Response Costs under this Consent Judgment.

    c.    <u>Records Retention Obligations</u>.

    i.    SFWD agrees that it shall retain all records related to the design, construction, operation and maintenance of the treatment system for SFWD Plant No. 3 for a period of no less than ten (10) years after the creation of such records. SFWD shall make available to the United States any of these records at any time prior to their actual destruction. This includes, but is not limited to, all records supporting or relating to design, construction, operation and maintenance costs, including, but not limited to, accounting documents, job cost ledgers, invoices, schedules, estimates, payment records, billing records, personnel documentation and timecards.

    ii.    SFWD agrees that it shall retain all past, present, and future environmental studies, data, reports, correspondence and other documents that concern regulatory exceedances of drinking water standards at Plant No. 3 and/or identify parties or properties that may be liable for such exceedances for a period of no less than ten (10) years after the creation of such document.

## VIII.   GENERAL PROVISIONS

13.   <u>Complete Agreement</u>. This Consent Judgment contains the complete agreement between the Parties regarding the subject matter addressed herein and fully supersedes all prior contracts, agreements, understandings, negotiations or discussions, oral or written, relating to the subject

matter hereof. There are no warranties, representations, agreements or understandings, oral or written, relating to the subject matter hereof that are not fully expressed or provided for herein.

14. <u>Modification</u>. This Consent Judgment, including, but not limited to, the Appendix A selected design specifications and parameters for the treatment system for SFWD Plant No. 3, shall not be modified or amended except by mutual written consent of the Parties.

15. <u>Headings</u>. Any section and paragraph headings in this Consent Judgment are provided solely as a matter of convenience to the reader and shall not be construed to alter the meaning of any paragraph or provisions of this Consent Judgment.

16. <u>Governing Law</u>. This Consent Judgment shall be governed and interpreted in accordance with United States federal law.

17. <u>Successors and Assigns</u>.

    a.     This Consent Judgment shall be binding on any successors and assigns of the Parties, including, but not limited to, any entity that acquires title to the SFWD public supply wells that are the subject of this Consent Judgment. Any change of ownership, corporate or other legal status of any Party to this Consent Judgment, including, but not limited to, a transfer of assets or real or personal property, shall in no way alter the obligations of any of the Parties under this Consent Judgment.

    b.     Within thirty (30) days after the Effective Date of this Consent Judgment, SFWD shall record a certified copy of this Consent Judgment in the public real property records of the Nassau County Clerk's Office in Mineola, New York. In the event of a transfer of ownership of or other interests in real property at or within SFWD Plant No. 3, SFWD shall ensure that a true and correct copy of this Consent Judgment is included with the deed, title or other instruments conveying such interests, and shall provide a true and correct copy of any such documents to the

United States within thirty (30) days after the effective date of the transfer of ownership or other interests.

c.     SFWD shall provide notice to the United States within thirty (30) days after the effective date of any change in corporate, municipal, or other legal status.

18.    Effect of Execution and Entry of Consent Judgment.

a.     This Consent Judgment was negotiated and executed by the Parties in good faith and at arm's length and is a fair and equitable compromise of claims that were contested. This Consent Judgment shall not constitute or be construed as an admission of liability by any Party or as an admission of violation of any law, rule, regulation or policy by any Party. Furthermore, this Consent Judgment shall not constitute or be construed as an admission or denial by any Party with respect to any factual allegation set forth in SFWD's Complaint or elsewhere, or with respect to any factual or legal issue that was, or could have been, raised during the litigation.

b.     Upon approval and entry of this Consent Judgment by the Court, this Consent Judgment shall be in effect and shall constitute a final judgment between the Parties with respect to the claims resolved by the Consent Judgment, and this action, entitled South Farmingdale Water District v. United States of America, No. CV-15-85, shall be dismissed with prejudice. The Effective Date of this Consent Judgment shall be the date that it is approved by the Court. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

19.    No Use As Evidence.  This Consent Judgment shall not be admissible as evidence in any proceeding other than: (i) an action, cross-claim, or counterclaim brought by the United States or SFWD to enforce this Consent Judgment; (ii) an action, cross-claim, or counterclaim brought by the United States against third parties to recover costs pursuant to sections 107 and 113 of

CERCLA, 42 U.S.C. §§ 9607, 9613; or (iii) any proceeding where the United States seeks to establish that it is entitled to contribution protection.

20. <u>Non-Parties to This Consent Judgment</u>. Nothing in this Consent Judgment is intended to be, nor shall be construed as a waiver, release or covenant not to sue for any claim or cause of action, administrative or judicial, in law or in equity, which the Parties may have against any person, firm, partnership, trust, corporation, or any other entity that is not a Party to this Consent Judgment.



~~21. Retention of Jurisdiction. This Court retains jurisdiction over both the subject matter of this Consent Judgment and the Parties for the purpose of enabling any Party to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Judgment, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with the provisions of this Consent Judgment.~~

22. <u>Notices</u>. Whenever, under the terms of this Consent Judgment, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided herein. Notices addressed to the United States shall be sent by reliable means of transmission with a certified confirmation of receipt to the sender.

For the United States:

> Sandra L. Levy
> Assistant United States Attorney
> United States Attorney's Office for the Eastern District of New York
> 271 Cadman Plaza East, 7th Floor
> Brooklyn, NY 11201
> Re: USAO File No. 2011V00607

Chief, Environmental Defense Section
United States Department of Justice
Post Office Box 23986
Washington, D.C. 20026-3986
Re: DOJ Case No. 90-11-3-1033690-11-6-18759

*For transmissions other than overnight mail*:
Commanding Officer
Mid-Atlantic Naval Facilities Engineering Command
Building Z-144
9742 Maryland Avenue
Norfolk, Virginia 23511-3015

*For overnight mail:*
Commanding Officer
Mid-Atlantic Naval Facilities Engineering Command
Building Z-144
9324 Virginia Avenue
Norfolk, Virginia 23511

For SFWD:

Superintendent
South Farmingdale Water District
40 Langdon Road
Post Office Box 3319
Farmingdale, New York 11735

Gary Loesch
H2M Group
538 Broad Hollow Road
Melville, New York 11747

James P. Rigano, Esq.
Rigano LLC
538 Broad Hollow Road, Suite 217
Melville, New York 11747

23.    Appendix.  The following appendix is attached to and incorporated into this Consent

Judgment:

"Appendix A" is a document memorializing the Design Specifications and
Parameters and Remedial Goal for the Treatment System for SFWD Plant No. 3.
(Public Supply Well 3-1)

24.   Original Counterparts.   This Consent Judgment may be executed in any number of original counterparts, each of which shall be deemed to constitute one agreement.  The execution of one counterpart by any Party shall have the same force and effect as if that Party had signed all other counterparts.

25.   Representative Authority.   Each signatory to this Consent Judgment hereby certifies that s/he has been duly authorized to enter into this Consent Judgment by the Party on whose behalf the signatory indicates s/he is signing.

THE UNDERSIGNED PARTIES enter into this Consent Judgment in the matter of South

Farmingdale Water District v. United States of America:

**For the United States of America:**

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Post Office Box 23986
Washington, D.C. 20026-3986

LORETTA E. LYNCH
United States Attorney
Eastern District of New York

By: *Sandra L Levy*                    Dated: January 6, 2015
Sandra L. Levy
Assistant United States Attorney
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East, 7th Floor.
Brooklyn, NY 11201

THE UNDERSIGNED PARTIES enter into this Consent Judgment in the matter of

South Farmingdale Water District v. United States of America:

**For South Farmingdale Water District:**


By: _____          Dated: _25 Nov 2014_
Chairman, Board of Commissioners
South Farmingdale Water District
40 Langdon Road
Post Office Box 3319
Farmingdale, New York 11735


By: _____          Dated: _November 27, 2014_
James P. Rigano, Esq.
Rigano LLC
*Attorneys for SFWD*
538 Broad Hollow Road
Suite 217
Melville , New York 11747


IT IS SO ORDERED:

s/ Sandra J. Feuerstein                     Dated: _1/9/15_
_____
United States District Judge


*Consent Judgment – South Farmingdale Water District v. United States*

# APPENDIX A

## SPECIFICATIONS, PARAMETERS AND REMEDIAL GOAL FOR THE TREATMENT SYSTEM FOR SFWD PLANT NO. 3 ( PUBLIC SUPPLY WELL 3-1)

The treatment design for SFWD Plant No. 3 (public supply well 3-1), shall be constructed with sufficient space to accommodate the addition of a future air stripping tower and related equipment and connections, should treatment become necessary in the future. Treatment of water from public supply well 3-1, shall utilize the following design specifications and parameters:

a. An air stripping treatment system consisting of one (1) air stripping tower and associated pumps and blower for VOC removal. This tower shall be designed and operated to achieve a minimum trichloroethene (TCE) removal efficiency of 99.49 percent;

b. A maximum water influent capacity no more than 1,400 gallons per minute (GPM));

c. A maximum trichoroethene ("TCE") influent concentration in raw water of 98 ug/L (i.e., 98 parts per billion);

d. A maximum 1,1-dichloroethane ("l,1-DCA") influent concentration in raw water of 17 ug/L (i.e., 17 parts per billion);

e. A maximum 1,1,2-trichloro 1,2,2-trifluoroethane ("Freon 113") influent concentration in raw water of 50 ug/L (i.e., 50 parts per billion);

f. A maximum 1,1-dichloroethene ("l,1-DCE") influent concentration in raw water of 20 ug/L (i.e., 20 parts per billion);

g. A maximum tetrachloroethene ("PCE") influent concentration in raw water of 50 ug/L (i.e., 50 parts per billion);

h. A maximum 1-1-1-trichloroethane ("1-1-1-TCA") influent concentration in raw water of 20 ug/L (i.e., 20 parts per billion);

i. An iron oxidation and filtration system containing two (2) filters for removing iron at an influent concentration in raw water of up to 3.0 milligrams per liter (mg/L) (i.e., 3,000 ppb); and

j. An iron effluent level that is not greater than 0.10 mg/L (100 parts per billion).

REMEDIAL GOAL: The remedial goal of the wellhead treatment system for SFWD Plant #3 (Public Water Supply Well 3-1) is to eliminate, to the extent practicable, detections of site-related contamination for the hazardous substances set forth in sections (c) to (h) of this Appendix A and iron (as set forth in section (j) of this Appendix A) for affected drinking water supplies using USEPA Method 502.2 to a detection limit of 0.5 ug/L (i.e., 0.5 parts per billion). If, after the Effective Date of the Consent Judgment, the drinking water standards or the maximum contaminant levels under promulgated federal or state requirements for the hazardous substances set forth in sections (c) to (h) of this Appendix A, and/or become more stringent than the standards or levels for the hazardous substances set forth in sections (c) to (h) of this Appendix A that are in effect on the Effective Date of the Consent Judgment, then the more stringent standards or levels for those hazardous substances will be met.